FUGITA *v.* W. MOTOSHIGE AND CLEMENT CROW-
ELL AS SHERIFF OF THE COUNTY OF MAUI,
TERRITORY OF HAWAII.

APPEAL FROM DISTRICT MAGISTRATE OF WAILUKU.

SUBMITTED MAY 18, 1914.                    DECIDED MAY 22, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

APPEAL AND ERROR—*nonsuit—exemption.*

> A judgment of nonsuit is properly entered in an action to recover a horse, wagon and harness levied upon under execution, and claimed to be exempt, where plaintiff fails to show that he is within one of the classes of persons protected by the statute.

STATUTES—*interpretation—words and phrases.*

> Section 1831, R. L., as amended, which exempts specified chattels by which a person following one of a number of enumerated occupations, "or other laborer," actually earns his living, from levy and sale under execution, held, not to apply to a person using any of such chattels in conducting a scheme in the nature of a lottery or game of chance.

OPINION OF THE COURT BY QUARLES, J.

The plaintiff commenced an action of replevin to recover a horse, wagon and harness seized by the defendant Crowell, as sheriff of the county of Maui, under an execution in favor of the defendant Motoshige, basing his action upon the ground that the articles levied upon are exempt from execution. Defense, the general issue. At the close of plaintiff's case the defendants moved for judgment of nonsuit which was granted. Plaintiff appeals to this court upon the point of law that the court erred under the evidence in rendering judgment of nonsuit. The seizure as alleged, demand for return, and value of the chattels seized, were admitted. On direct examination the plaintiff testified as follows: "My name is Fujita. I know W. Motoshige and Clement Crowell, defendants in this case. On the 23rd of March, A. D. 1914, Deputy Sheriff John Ferreira took from my possession 1 horse, 1 wagon and 1 set of harness, this property has not been returned, it was seized under execution. The horse was valued at $65.00, $18.00 for wagon and $7.00 for harness. I was the owner of this property at the time it was seized. I was making my living by the spinning wheel at the time of seizure of this property. (Ex. 'A') I was using the horse wagon and harness going from place to place with this device at the time of seizure. I was going to Paia, Makawao, Puunene, Waikapu &c. I did not have any other means or horse and wagon, by which I could convey my things to the different places. This was the means I used to make my living at the time, and for about 4 years prior to the seizure, I lived in Wailuku about 14 years. I would make no profit if I had to hire a team to take this around. I had goods other than horse and wagon. I have the goods yet. I have the goods here now. I make from 30.00 to a hundred dollars a month. I once made $120.00. Witness opens a basket and displays his stock of goods which he carries from place to place working the game. Goods consists of a

variety of small articles carried in a hamper about 2 ft. 6 inches x 1 ft. 6 x 1 ft. I claim the horse wagon and harness is exempt from execution for the reasons set forth in my letter to the Sheriff dated April 6-7th inst."

The ground of exemption stated in the written demand made on the defendant sheriff, is: "I used the same in a line of business similar in its character to the specific occupations named in section 1831 of the Revised Laws of Hawaii, as amended by Act 39 of the Session Laws of Hawaii of 1911, and that such use was and is necessary in order to enable me to earn my living." On cross-examination the plaintiff explained the working of his "spinning wheel" which was introduced in evidence, the same being what is ordinarily termed a "wheel of fortune," having lines radiating from a common center, and the numbers one to eight inclusive placed within an inner circle designating certain lines, the other numbers, nine to thirty-two, being placed at the outer rim of the wheel designating other lines; two arms revolving on a standard, to one of which a thread and needle are attached. The scheme, as explained by plaintiff, is worked as follows: The player, if he desires one "spin" pays ten cents, or if he desires three "spins," pays twenty-five cents; the arm is then given a turn so as to make it spin around and the number at which the needle stops indicates the corresponding prize drawn by the player. The plaintiff testified that each number drew a prize, but did not state the value of the various prizes. He introduced in evidence a basket of goods used by him as prizes, but the evidence does not show the value of the several articles. Inspection of the goods indicates the greater number of the articles are of very little value while others are of greater value, among which is a razor upon the case of which the price is stamped as being $3.00.

The district court sustained the motion of nonsuit upon the ground that the evidence did not show that the plaintiff actually used the chattels in earning a lawful living. The motion was

properly sustained upon the ground stated, and also upon another ground apparent upon the record. The plaintiff did not show that he was engaged in hauling freight or persons from one place to another, hence he did not show that he is a "cartman," "drayman," "truckster," "hackman," "teamster," "chauffeur," or "driver" within the purview of section 1831 Revised Laws as amended by Act 71, Session Laws of 1913. He testified that he had no peddler's license, and that the authorities informed him that his business was such as to require no license. On his own showing he was not traveling from place to place selling goods, wares and merchandise, hence he did not show that he was a "huckster" or a "peddler." Was he an "other laborer" within the meaning of the statute? The word "laborer" is used ordinarily to designate a person who follows a toilsome occupation as distinguished from that of an artisan or skilled person. Ordinarily, it does not include one whose labor is-mental rather than physical. It generally signifies one who is an employe. The phrase "other persons" in statutes like that under consideration is generally interpreted to include such persons only as are within the spirit and general intent of the statute. This phrase is not used in our statute, but that of "other laborers," which should receive a similar interpretation. We find this phrase immediately following the words "hackman, teamster, chauffeur and driver," evidently referring to persons who work or labor and actually use the exempted article or articles in "earning a living." Our statute intended to include three classes of persons, viz: first, those who haul persons or freight, or both, from place to place for hire; second, those who travel from place to place selling goods, wares and merchandise; third, physicians, surgeons and ministers of the gospel.

The burden was on the plaintiff to show that he was within one of the included classes. He failed to do so. Conducting a game, or carrying on a scheme wherein mere chance is a control-

ling and impelling element, can hardly be said to constitute one a laborer within the meaning of the statute. The meagre description given by the plaintiff of his operations, the exhibition of the device used by him, and of the goods, and the different value of the various articles, are sufficient to raise the inference, in the absence of further explanation, that the scheme was in the nature of a lottery. The district court evidently so concluded, rightly we think. The statute was intended to protect persons engaged in lawful occupations. The law does not favor persons conducting lotteries or any species of gambling. The statute was not intended to exempt from execution any property used in other than lawful occupations. The evidence does not show that the plaintiff is engaged in any of the occupations named in the statute, and does not show that he was using the horse, wagon and harness levied upon in "actually earning a living" in any occupation or profession protected by the statute.

Judgment affirmed.

Plaintiff in person.

*E. Murphy* for defendants.

